UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DIEGO EZEQUIEL IRAHETA CAMPOS,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondent. | Case No. 2:26-cv-02178-TLF<br>ORDER |

Diego Ezequiel Iraheta Campos, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241, alleging respondents violated the Fourth and Fifth Amendment and various statutes and regulations in re-detaining him for immigration processing, and challenging the denial of bond at his bond hearing. Dkt. 1 (petition) at 8-10. Petitioner filed the petition on June 23, 2026. Dkt. 1 (petition). Respondents filed a response (Dkt. 5) and petitioner filed a reply (Dkt. 8). Due to discrepancies with hearing transcripts and documentation of the hearing, additional orders and submissions of the parties were entered. Dkt. 9, 10, 11, 12, 15, 16, 17.

Petitioner asks for the following relief: (1) a writ of habeas corpus ordering respondents to immediately release him from detention under the same conditions that existed before he was detained; (2) order that respondents return petitioner's personal property immediately upon release; (3) an order permanently enjoining his re-detention or imposition of electronic monitoring without at least seven days advanced written

notice and a pre-deprivation hearing before a neutral decisionmaker, unless he is subject to mandatory detention; absent constitutionally adequate procedures; (3) an award of attorney fees and costs. Dkt. 1 (petition) at 11-12.

The parties unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 3.

For the reasons discussed below, the Court DENIES the petition without prejudice.

## BACKGROUND

Petitioner is a citizen of El Salvador. Dkt. 7 (Britt, Jr. Decl.) at ¶ 4. On or about April 15, 2017, when he was 10 years old, petitioner and his mother were encountered by U.S. Customs and Border Protection ("CBP) in or near Hidalgo, Texas. *Id.* Dkt. 1 (petition) at 4. Petitioner and his mother were determined to have entered without inspection and lacking valid documents to enter the U.S. and were processed for expedited removal pending a credible fear determination. *Id.*

Petitioner and his mother were released on an Order of Recognizance ("OREC"). Dkt. 1 at 4; Dkt. 1-1 (OREC); Dkt. 7 (Andrade Decl.) at 2. Petitioner's OREC required that he "not associate with criminals or members of a gang that are known to be involved in criminal activity" and that he "not commit any crimes or be associated with any criminal activity." Dkt. 1-1.

Petitioner's mother applied for asylum and other relief with petitioner as a rider on her applications. Dkt. 1 (petition) at 4. On September 22, 2021, an immigration judge ("IJ") denied petitioner's, and his mother's, applications for relief from removal and ordered them removed to El Salvador. *Id.* Dkt. 7 (Britt Jr. Decl.) at 2. Petitioner appealed

the IJ's removal order to the Board of Immigration Appeals ("BIA") on October 22, 2021. *Id.*

Respondents present evidence of the following criminal history:

On April 23, 2024, petitioner was arrested by the Kent Washington Police for the offense(s) of Firearm Possess Unlawful in the 2nd Degree Under 18-years-old (9.41.040(2)(A)(V) WA), Deliver Pistol-Minors & Others (9.41.080 WA), and Firearm Possession Unlawful 2nd Degree Previous (Conviction) (9.41.040(2)(A)(I) WA). No charge was filed for the offense of Firearm Possession Unlawful 2nd Degree Previous (Conviction). Dkt. 7 (Britt Jr. Decl.) at 3. For the Firearm Possess Unlawful in the 2nd Degree Under 18-years-old, petitioner received a month of community supervision and 36 hours community restitution. *Id.* The offense of Deliver Pistol-Minors & Others was vacated on October 24, 2024. *Id.*

On April 23, 2024, petitioner was arrested by the Kent Washington Police for the offense(s) of Firearm Possession (9.41.040 WA). *Id.* No charge was filed. *Id.*

On February 27, 2025, petitioner was arrested by the Thurston County Sheriff for the offense(s) of Burglary 1st Degree (9A.52.020(1)(B) WA), Attempting to Elude Police Vehicle (46.61.024(1) WA), Firearm Possession Unlawful 1st Degree (9.41.040(1)(B) WA), and Firearm Possession Unlawful 1st Degree (9.41.040(1)(B) WA). *Id.* Respondents represent that the charges are pending. *Id.*

The petitioner asserts he was charged by information on March 3, 2025, in relation to the February 27, 2025, arrest, with Conspiracy to Commit Burglary in the First Degree (Armed w/ Deadly Weapon), Attempting to Elude a Pursuing Police Vehicle, and Obstructing a Law Enforcement Officer. Dkt. 1 (petition) at 4-5; Dkt. 1-2

(Information). Three adult co-defendants were also charged, and a juvenile was charged separately. Dkt. 1 (petition) at 4-5.

On April 30, 2025, petitioner reported to the Seattle, Washington ERO office for a scheduled check-in. Dkt. 7 (Britt Jr. Decl.) at 3. Based on petitioner's arrest records, ERO management conducted a custody review and determined petitioner would be detained as a danger to the community. *Id.*; Dkt. 6-4 (Form I-213). Petitioner was taken into ICE custody and transported to the NWIPC. *Id.* Respondents also submit an immigration arrest warrant dated April 30, 2025. Dkt. 6-5 (warrant).

Petitioner asserts that he has depression, hears voices, he was receiving mental health treatment before he entered ICE custody, and has continued in treatment. Dkt. 1 (petition) at 5. On May 12, 2025, DHS notified the BIA of concerns about whether petitioner was incompetent. Dkt. 1-4 (DHS Notice Concerning Mental Health Status and Request for Competency Inquiry).

On October 17, 2025, the Tacoma Immigration Court held a hearing, determined petitioner was competent, and certified his appeal back to the BIA, where it remains pending. Dkt. 1 (petition) at 6; Dkt. 6 (Andrade Decl.), Ex. H.

Petitioner was afforded a "Franco bond" hearing[1]; it started November 7, 2025, was continued to November 13, 2025, was continued again then completed on November 18, 2025, where the government had the burden to demonstrate either dangerousness or flight risk by clear and convincing evidence. Dkt. 6 (Andrade Decl.),

[1] The *Franco-Gonzalez* injunction requires that detainees who are ultimately found to be "incompetent" are entitled to the appointment of a qualified representative and that class members detained for more than 180 days are entitled to a bond hearing where the government bears the burden of demonstrating either dangerousness or flight risk by clear and convincing evidence. *See Franco Gonzalez v. Holder*, No. CV 10-02211, 2013 WL 3674492, at *8-13 (C.D. Cal. Apr. 23, 2013) ("Franco-Gonzalez").

Exs. F, G; Dkt. 15 (Second Andrade Decl.) Exs. B, C. Petitioner appeared at the bond hearing pro se. Dkt. 7 (Britt Jr. Decl.) at 3. The IJ found the government had shown petitioner to be a danger to the community and a flight risk by clear and convincing evidence and denied bond. *Id.*; Dkt. 6 (Andrade Decl.), Exs. F, G. Petitioner appealed the IJ's bond denial to the BIA on December 19, 2025. Dkt. 7 (Britt Jr. Decl.) at 3. That appeal is still pending. *Id.*

## DISCUSSION

### A. Petitioner's Warrantless Arrest Claim

Petitioner contends he was detained without a warrant in violation of the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and the settlement agreement in *Castañon Nava v. Dep't of Homeland Security*, 18-cv 03757, Dkt. 146-1 (N.D. Ill. Nov. 30, 2021). Dkt. 1 (petition).

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. And 8 U.S.C. § 1357(a)(2) provides:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant-- …
>
> (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

Here, the records produced by respondents show petitioner was detained when he appeared for a check-in on April 30, 2025, a records check revealed his pending felony charge, and a warrant was issued dated the same day of his arrest.

The petition makes the assertion that petitioner was arrested without a warrant but does not address the fact that the record contains a warrant dated the same day as his arrest. Dkt. 6 (Andrade Decl.), Ex. E (warrant). In reply, petitioner asserts that respondents do not present evidence that the warrant was issued *before* petitioner was arrested. Dkt. 8 (reply). But this argument was raised for the first time in reply, and petitioner comes forward with no specific affirmative evidence that the warrant was not issued before the arrest – i.e., that petitioner was not made aware of the warrant, that the warrant was never served on petitioner (as the warrant indicates), or was served sometime after petitioner was detained. *See* Dkt. 6 (Andrade Decl.), Ex. E (warrant).

Here, respondents produced a warrant issued on the date of petitioner's arrest, and the conclusory assertion in the petition that petitioner was arrested "without a warrant" is insufficient. *See Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (In "federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true[.]").

The Court also notes that even if petitioner could show he was arrested prior to issuance of the warrant, the Court is not convinced this would be an independent basis for his immediate release from custody in a habeas action under the Fourth Amendment or the Immigration and Nationality Act ("INA"). *See Suraj v. Bondi*, 2:25-cv-02699-TMC,

2026 WL 507682, at *2 (W.D. Wash. Feb. 24, 2026) (finding “even if petitioner’s arrest was unlawful, it would not provide a basis for release from custody… And while the legality of [petitioner’s] initial arrest may be at issue in his removal proceedings, it does not provide this Court a basis for concluding that his current detention violates the INA or the Constitution”); *id.* (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984) (The “body” of an unlawfully arrested detainee is not “itself suppressible as a fruit of an unlawful arrest”) and *United States v. Garcia-Beltran*, 443 F.3d 1126, 1132 (9th Cir. 2006) (“a defendant, including his identity, is properly before a court in a criminal or civil proceeding despite the initial illegal police action.”)).

Petitioner also cites to the settlement agreement in *Castañon Nava v. Dep’t of Homeland Security*, 18-cv 03757, Dkt. 146-1 (N.D. Ill. Nov. 30, 2021) but acknowledges he is not a member of the class in that class action. Dkt. 1 at 8. Petitioner fails to establish the settlement in *Castañon Nava* alters the Court’s analysis.

**B. Presumption of Innocence**

Petitioner claims respondents violated the Fourteenth Amendment by stripping him of the presumption of innocence and the Due Process protections for determining guilt. Dkt. 1 at 9-10. He appears to argue that by detaining him based on his arrest and pending charges, without a conviction, respondents are violating his constitutional rights.

But petitioner cites no binding case law that detaining a noncitizen in this particular context -- for immigration proceedings in part based on the consideration of pending criminal charges in assessing dangerousness and/or risk of flight -- violates the

presumption of innocence. *See Calderon v. Noem*, No. 2:26-CV-00352-BAT, 2026 WL 507683, at *2 (W.D. Wash. Feb. 24, 2026).

Petitioner fails to show that his civil detention here necessarily violates the presumption of innocence or otherwise necessarily violates the constitution because he has only been charged, not convicted, of certain offenses.

**C. Statutory Basis for Detention**

Respondent argues that petitioner is mandatorily detained under 8 U.S.C. § 1225 because he entered the United States without inspection and was never lawfully admitted. Dkt. 5 at 5-6.

In determining whether petitioners who have been apprehended on arrival, released, and later apprehended again, are subject to discretionary detention under § 1226(a) or mandatory detention under § 1225(b), the Court considers the government's treatment of the petitioner seeking habeas relief as "particularly relevant." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). If the government treats petitioner as being subject to discretionary detention under § 1226, rather than § 1225 mandatory detention, and they provide no reasoning or factual and legal basis to justify mandatory detention, then the Court should rely on § 1226 as the applicable statutory authority. *Id.*; *see also, Romero v. Hyde*, 795 F. Supp.3d 271, 282 (D. Mass. 2025) (ICE documentation showed petitioner was detained under § 1226, even though respondents argued in response to the habeas corpus petition that mandatory detention was appropriate under § 1225(b)).

An applicant for admission is subject to a different statutory detention process, than a person who has entered the United States without inspection. *See Rodriguez Vazquez v. Bostock,* 183 F.4th 1160, 1184-1193 (9th Cir. 2026).

Here, the record shows petitioner has been treated as having entered the United States without inspection, and he is subject to discretionary detention under § 1226(a). Individuals detained under § 1226(a), may be released on bond or on conditional parole during the pendency of removal proceedings. 8 U.S.C. § 1226(a).

Persons detained under § 1225 may only be released for "urgent humanitarian reasons or significant public benefit" under the agency's parole authority under 8 U.S.C. § 1182(d)(5)(A). Here, shortly after being detained petitioner was released, not on humanitarian parole, but on an OREC which states "[y]ou have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with … [various] conditions[.]" Dkt. 6 (Adrade Decl.), Ex. C (OREC); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)").

For these reasons, § 1226 governs petitioner's detention, and he is not subject to mandatory detention under § 1225.[2]

---

[2] Even if petitioner were subject to mandatory detention under § 1225, his re-detention must still comply with due process. *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. March 12, 2026) ("statutory authority to detain does not obviate respondents' obligation to comply with due process"); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain

**D. Petitioner's Re-Detention Claim**

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " U.S. Const. amend. V. This right extends to "all persons within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Here, petitioner argues his re-detention violates the Due Process Clause under the three factors for reviewing a claim of a violation of due process as-applied. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); Dkt. 1 at 11-17. To assess petitioner's arguments, the Court adopts the reasoning of *E.A. T.-B.*, 795 F. Supp. 3d at 1320-24. *Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

While the U.S. Constitution generally requires some kind of hearing before the State deprives a person of liberty or property, there still may be situations in which a prompt post-deprivation hearing is appropriate. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. July 17, 2025).

1) First *Mathews* Factor, Private Interest

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

---

Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

The respondents argue that they were entitled to re-detain petitioner without additional process based on his new criminal charges, which violated the terms of his OREC. Dkt. 5 at 8.

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). And "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093, No. 2:25-cv-00647-DJC-DMC, (E.D. Cal. Mar. 3, 2025); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable)).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S 319 at 333 (quoting *Armstrong*, 380 U.S. at 552). On the facts of this case, the Court must determine whether a pre-deprivation hearing is required, or whether respondents could conduct a hearing after an individual in petitioner's situation was initially arrested and detained by ICE, and the timing and nature of such a hearing. *See generally, Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991) (under the Fourth Amendment, a person arrested without a warrant must be brought before a neutral magistrate within 48 hours of arrest (or less, if the person can prove the probable cause determination was delayed unreasonably));[3] *see also Morrissey v. Brewer*, 408 U.S. 471 (1972) (probable cause hearing required after arrest for parole violation, and revocation hearing must take place within a reasonable time); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (holding that petitioner's ATD records indicated numerous violations and ordering a post-deprivation bond hearing within 10 days of court order).

Here, petitioner was released on his own recognizance on an OREC in 2017. His release necessarily required the consideration of his risk of flight and dangerousness. *See Ledesma Gonzalez v. Bostock*, 808 F.Supp.3d 1189 (W.D. Wash. Oct. 7, 2025) (discussing "conditional parole (also called an Order of Release on Recognizance, or

---

[3] The liberty interests of a person arrested under an immigration detainer or warrant, analyzed under the Fifth Amendment due process factors of *Matthews*, are similar to the liberty interests recognized in *Gerstein v. Pugh,* 420 U.S. 103 (1975). *See Kakkar v. Chestnut,* 1:25-CV-1627 JLT SAB, 2025 WL 3638298 (E.D. Cal. Dec. 15, 2025) (person recently released from prison would not have the same weighty significant private interest under *Mathews* as a person who had been successfully compliant with conditional release for a lengthy period before re-arrest on immigration matter).

'OREC'). 8 U.S.C. § 1226(a); … The corresponding regulation requires that, before granting release, the immigration officer must determine that such 'release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding'. 8 C.F.R. § 236.1(c)(8)").

Here, petitioner was arrested on February 27, 2025, for offenses of Burglary 1st Degree (9A.52.020(1)(B) WA), Attempting to Elude Police Vehicle (46.61.024(1) WA), Firearm Possession Unlawful 1st Degree (9.41.040(1)(B) WA), and Firearm Possession Unlawful 1st Degree (9.41.040(1)(B) WA). *Id.* Later he was charged on March 3, 2025, in relation to the February 27, 2025, arrest, with Conspiracy to Commit Burglary in the First Degree (Armed w/ Deadly Weapon), Attempting to Elude a Pursuing Police Vehicle, and Obstructing a Law Enforcement Officer. Dkt. 1 at 4-5; Dkt. 1-2 (Information).

Petitioner was re-detained by immigration officials at a routine check-in on April 30, 2025, based on the new arrest and charges.

Petitioner argues he was not ultimately charged with a firearms offense for the February 27, 2025, arrest. Dkts. 8, 11. This argument is unpersuasive on this point, as petitioner was charged by information on March 3, 2025, related to his February 27, 2025, arrest, with Conspiracy to Commit Burglary in the First Degree (Armed w/ Deadly Weapon), Attempting to Elude a Pursuing Police Vehicle, and Obstructing a Law Enforcement Officer. Dkt. 1 (petition) at 4-5; Dkt. 1-2 (Information).

Petitioner also argues that the charges were dismissed against the other adult co-defendants in his case and that therefore it is likely the charges would have been dismissed against him as well had he not been detained by ICE and unable to appear

for the Court date in his criminal case. Dkt. 1 (petition). But this assertion is speculative – the Court cannot conclude, without additional facts or evidence, that the charges against petitioner would also have been dismissed solely because they were dismissed against the other adult co-defendants. Petitioner presents no evidence of efforts made in petitioner's criminal court case to have him produced to appear and defend the charges in that case, or that ICE or DHS has impeded any such efforts.

Petitioner has been deprived of an established interest in his liberty. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21 ("Petitioner was arrested in public, detained and transferred to a facility in a different state, and remains in custody today undoubtedly deprives him of an established interest in his liberty."). Yet there is an undisputed showing of changed circumstances as petitioner has been re-detained based on his arrest and pending charges.

2) Second *Mathews* Factor, Risk of Erroneous Deprivation

Here, the respondents contend that petitioner was properly re-detained based on his arrest for pending charges and that he is not entitled to a bond hearing or any additional process as he is mandatorily detained under § 1225(b). Respondents further argue that even if petitioner were entitled to a bond hearing, he received a bond hearing where the government bore the burden of proof of demonstrating he was a danger or a flight risk by clear and convincing evidence, and bond was properly denied.

Petitioner's arrest and charges related to burglary (armed with a deadly weapon) and related charges constitute a change in material circumstance from the circumstances of petitioner's initial release and, given the nature of the crimes, could reasonably be seen as presenting circumstance requiring arrest and re-detention before

a hearing. Under these circumstances, the Court finds a prompt post-deprivation hearing where the burden of proof is placed on the government to demonstrate flight risk or danger by clear and convincing evidence would be consistent with due process.

Here, petitioner received a post-deprivation hearing on November 7, 13, and 18, 2025, where the burden of proof was placed on the government to show by clear and convincing evidence that petitioner was a danger or risk of flight. He has failed to show how this particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

2) Third *Mathews* Factor, Government's Interest

Under the final *Mathews* factor, the Court considers the government's interest in arresting and detaining petitioner.

The government has an obvious interest "in protecting the public from dangerous criminal [noncitizens].'" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting *Denmore v. Kim*, 538 U.S. 510, 515).

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore,* 538 U.S. at 518).

Based on this review of the *Mathews* factors, the Court finds a prompt post-deprivation bond hearing with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196, 1203-08 (9th Cir. 2011), *abrogated on other grounds in Rodriguez Diaz,* 53 F.4th at 1196, 1210-1211 – where a contemporaneous record is made of the hearing, and the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community -- would be consistent with due

process. Here, a bond hearing was held on November 7, 13, and 18, 2025. The Court analyzes petitioner's challenges to the bond hearing below.

**E. Petitioner's Challenge to the Bond Hearing**

Here, the petition challenges only the IJ's finding that petitioner was a flight risk, not the IJ's finding of dangerousness. Dkt. 1 at 11. But in denying bond, the IJ found petitioner to be both a danger and a flight risk and either finding is a sufficient basis to deny bond. The Immigration Judge made detailed findings. Dkt. 6 (Andrade Decl.) Ex. H (IJ Order on Bond Hearing).

Petitioner argues in response to the respondents' submission of the November 18, 2025, bond hearing transcript that the government relied on several "falsehoods" in the transcript, namely, that: (1) petitioner was convicted and sentenced on a case in juvenile court but a juvenile cannot be "sentenced" under Washington law, and petitioner was not "adjudicated" but was granted a Deferred Disposition for the charge of firearm possession, unlawful, second degree, and ordered to do several conditions including 36 hours of community restitution, treatment requirements, and other conditions and when petitioner complied with the conditions, it ended the Deferred Disposition; (2) the government claimed petitioner had "criminal history," "specifically on April 23, 2024" but no charge was filed for any alleged offense on April 23, 2024; (3) the government claimed petitioner had a "pretty lengthy criminal history" but petitioner has no adult convictions and no juvenile adjudications; (4) the government claimed petitioner had a pending adult charge for "firearm possession unlawful in the first degree" but the prosecutor's information reflects petitioner was not charged specifically with a firearm offense. Dkt. 11. While petitioner appears to raise challenges to the facts

as presented by the government at the bond hearing, he does not challenge the IJ's determination of dangerousness – which itself can be a sufficient basis to deny bond -- as opposed to flight risk.

The Court issued a subsequent order directing submission of the transcript of the beginning of the bond hearing and noting that in petitioner's brief (Dkt. 11) responding to the November 18, 2025, continuation-of-bond-hearing transcript, it was unclear whether petitioner raises arguments connected to the claims raised in the petition for habeas corpus, or whether petitioner's arguments are new claims that were not raised in the petition. Dkt. 12. In response to the order, petitioner submitted a supplemental brief stating that "[t]o clarify, the petitioner did not mean to imply that he was adding a claim or that he intended to amend the Petition, although counsel sees now that the response can be read that way. … He intended to support his original claim that evidence at the bond hearing was insufficient: 'The bond hearing was also deficient because the immigration judge abused her discretion by finding on the evidence presented that Mr. Iraheta is a flight risk.'" Dkt. 17 (quoting Dkt. 1, ¶36).

Petitioner also argues the immigration judge "did not consider Mr. Iraheta's financial circumstances or alternative conditions of release, thereby severing any connection between the detention and a legitimate governmental interest." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). But the IJ denied the request for a monetary bond or conditions and petitioner makes no specific substantive argument regarding what evidence the IJ allegedly failed to consider or engage with (nor can the Court make that assessment on the current record) in denying release on alternative conditions.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus (Dkt. 1) is DENIED without prejudice.

Dated this 30th day of October, 2026.

Theresa L. Fricke
United States Magistrate Judge